STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re* **G.H.**

**No. 20-0985** (Kanawha County 19-JA-630)

**MEMORANDUM DECISION**

Petitioner Father R.H., by counsel James T. Cooper, appeals the Circuit Court of Kanawha County's November 12, 2020, order terminating his parental rights to G.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying him an improvement period, failing to give proper weight to his witnesses, making findings against the weight of the evidence, and failing to timely enter a dispositional order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Over the course of twenty years, petitioner and the mother, T.H., have had a long history of Child Protective Services ("CPS") involvement that has resulted in the termination of their parental rights to six older children through various child abuse and neglect proceedings. Although not clear from the record, it appears that petitioner's parental rights were either involuntarily terminated or voluntarily relinquished to three older children in 2001 due to abandonment or neglect.[2] In 2005, child abuse and neglect proceedings were instituted against petitioner's then-

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]T.H. was not the mother of these three children.

1

wife, T.H., with regard to two of her children from a prior relationship after the children made disclosures of sexual abuse by petitioner. During those proceedings, it appears that the circuit court made findings that the children were sexually abused, and T.H.'s parental rights to those children were eventually terminated. Petitioner was not named a respondent parent in that proceeding as he had no parental rights at stake. In 2006, petitioner's and T.H.'s parental rights to a subsequently born child were terminated. Services were offered to petitioner in both the 2001 and 2006 proceedings.

T.H. gave birth to G.H., the only child at issue, in October of 2013. In October of 2019, the DHHR filed the instant child abuse and neglect petition against petitioner and T.H. after receiving several referrals regarding G.H.'s unmet hygienic, nutritional, and medical needs. The DHHR alleged that the parents failed to correct the conditions of abuse that led to the prior termination of their parental rights to their older children and failed to adequately care for G.H. as the child was observed to be dirty, to smell bad, and to lack adequate food.

Later in October of 2019, the circuit court held a preliminary hearing wherein the DHHR moved to continue the matter until the child completed a Child Advocacy Center ("CAC") interview. Without objection, the motion was granted. Counsel for petitioner requested services and visitation with the child. The request was denied pending his completion of a parental fitness/psychological evaluation. The circuit court reconvened the preliminary hearing later that month. Counsel for petitioner moved to dismiss the petition, and the circuit court denied the motion. At the conclusion of the hearing, the circuit court found probable cause that imminent danger existed to the well-being of the child at the time of the petition's filing and that continuation in the home was contrary to the child's best interest, ratifying the removal. The circuit court again denied petitioner's motion for services and visitation as he had not yet completed the required evaluations.

The circuit court held an initial adjudicatory hearing in February of 2020. The CPS worker testified that a review of the child's medical records revealed that she underwent dental reconstructive surgery in 2017 due to having fifteen decayed teeth. During the procedure, the surgeon had to replace the child's teeth with synthetic substitutes. Medical records also revealed that the child had frequent urinary tract infections ("UTI"), with some leading to hospitalizations. The CPS worker also testified that the child had suffered from labial adhesion, anal tears, accidental drug ingestion, and a multitude of other medical issues as shown in her medical records. The child also had speech delays and drooled when she spoke, and the CPS worker testified that petitioner never sought intervention for the child because he did not recognize the need. The CPS worker testified that the child had issues with personal hygiene and that the foster family reported that she did not know how to bathe herself. The CPS worker conceded that the child did not disclose any abuse by petitioner in her CAC interview.

The CPS worker also testified about petitioner's prior termination of his parental rights to older children. The CPS worker stated that a multitude of services were provided to petitioner throughout those proceedings and further opined that petitioner's behavior had not changed since the prior terminations. Following testimony, the circuit court continued the hearing.

2

The circuit court reconvened the adjudicatory hearing in March of 2020. Due to the unavailability of the DHHR's next witness, the circuit court allowed petitioner to present the testimony of one of his witnesses out of order. The child's prior preschool teacher testified that petitioner appeared very protective of the child and concerned with her well-being while dropping her off and picking her up from school. The teacher testified that the child was always neatly dressed and clean and that she had no concerns with petitioner's parenting. The teacher denied that the child ever had matted hair or a bad odor. Following the teacher's testimony, the circuit court continued the hearing.

At a reconvened adjudicatory hearing held in June of 2020, petitioner continued with the presentation of his witnesses. Dr. Joseph Maustic testified that he performed a sexual abuse examination of the child after she was placed in foster care and had been observed cutting and stabbing the pubic area of her pants. Dr. Maustic testified that the child suffered a labial adhesion, which was likely naturally occurring due to the lack of scar tissue observed, rather than a sign of sexual abuse. Dr. Maustic opined that, due to the labial adhesion, the child could not have been vaginally penetrated recently, and most likely, had never been penetrated at all. Dr. Maustic conceded, however, that his exam could not reveal other forms of sexual abuse. Dr. Maustic also testified that the child had a yeast infection at the time of the exam due to hygiene issues.

Dr. Jennifer Divita, the child's primary treating pediatrician, testified that petitioner frequently brought the child for medical appointments and that she was always clean and appropriately dressed. Dr. Divita testified that she never had any concerns of abuse or neglect and that the child was current on all vaccines and "everything we needed to do." Dr. Divita conceded that the absence of any signs of abuse or neglect during the child's appointments did not definitively mean that abuse or neglect had not occurred. Dr. Divita noted that she spent only a brief period of time with the child and petitioner when they visited her office and that there may not have been any signs to show abuse or neglect at those times.

Petitioner then presented the testimony of his now-adult daughter S.M. S.M. testified that petitioner's parental rights to her were terminated in a 2001 child abuse and neglect case when she was nine years old. S.M. testified that petitioner never inappropriately touched her and that his rights had been terminated to her largely due to abandonment. S.M. testified that she rekindled her relationship with petitioner when she was sixteen years old and that, sometime in 2018, she and her three children lived with petitioner and G.H. S.M. described the relationship between petitioner and G.H. as very loving and she opined that the child was always clean and cared for. S.M. stated that petitioner had grown a lot as a person since his prior child abuse and neglect proceedings and "realizes what he did when [she] was a child, and he's doing everything in his power to make sure G.[H.] doesn't go through that."

Petitioner's friend, B.M., testified that she saw petitioner and the child every day and that she never had any concerns with petitioner's parenting. B.M. testified that the child was always clean and cared for, that petitioner took the child to school and medical appointments, and that she never saw any inappropriate touching between petitioner and the child. B.M. was aware of petitioner's parental rights to an older child having been terminated in 2006, and she opined that he had matured since that time and was capable of caring for G.H. Petitioner's counsel proffered

3

that B.M.'s husband would testify in a consistent manner. A family member also testified and denied that petitioner sexually abused or failed to care for G.H.

Petitioner testified that he cared for the child and attended to all her medical and educational needs. Petitioner also testified that the child always had appropriate food. Petitioner testified regarding the 2001 child abuse and neglect case and stated that, at the time, he was receiving disability checks. However, the checks were assigned to his cousin, who would not help petitioner pay for things like furniture. This resulted in petitioner and his three older children "sleeping on garbage bags with our clothes in them because he wouldn't do nothing, and I couldn't get my check." Petitioner stated CPS "took them because they called it neglect" and that he voluntarily relinquished his parental rights to those three children. Regarding the 2006 case, petitioner claimed that T.H. left him for another man and he could not pay the mortgage. The home also became infested with rats at that time, and petitioner took their child to a friend's house to stay for a couple of days until he could find a suitable home. Petitioner testified that an acquaintance who was mad at him for kicking him out of the home "took it upon himself" to call CPS and make false allegations of abuse and neglect against petitioner. Petitioner acknowledged deficiencies in his parenting before but claimed to have grown from his mistakes. Petitioner testified that he was not a respondent parent in the 2005 case that was filed regarding T.H.'s older children from a prior marriage. Petitioner stated that the children made allegations of sexual abuse against him and that he was never permitted to testify or defend himself against the allegations. Petitioner denied inappropriately touching the children. On cross-examination, petitioner denied that he neglected G.H. with regard to her teeth and denied statements from the child's dental records that he refused to assist the child with dental care or receive dietary advice.

After another continuance, the circuit court reconvened the adjudicatory hearing for a final time in July of 2020. The DHHR presented the testimony of Barbara Nelson, a licensed psychologist with Saar Psychological Group. Ms. Nelson testified that she performed an evaluation of petitioner and diagnosed him with unspecified personality disorder and borderline intellectual functioning. Ms. Nelson stated that testing indicated that petitioner was "not adept at those tasks that are required for independent living. He doesn't make good decisions. He doesn't do the things necessary to live on his own . . . ." Ms. Nelson further testified that petitioner showed no empathy or remorse for G.H.'s circumstances, or those of his older children, and minimized or denied responsibility for his actions. Petitioner blamed other people for his actions. According to Ms. Nelson, petitioner did not appear to have the ability to self-reflect or understand his shortcomings. Ms. Nelson stated that petitioner felt he was a good parent and thought that simply walking his child to school every day and taking her to sing karaoke was the mark of a good parent, but ignored that G.H. had many significant medical and dental issues that he failed to address. Petitioner claimed that he had not been able to teach the child proper bathroom hygiene and that was the reason she smelled. Ms. Nelson testified that petitioner could not distinguish priorities between critical child development and "what's trivial." For example, when petitioner accomplished a simple, mundane parenting task, he considered it "full-blown parenting." Ms. Nelson opined that petitioner's prognosis for attaining minimally adequate parenting was extremely poor to nonexistent. Petitioner took no responsibility for his actions and, consequently, saw little reason to change, as evidenced by his involvement in several cases despite services and intervention. Ms. Nelson testified that her assessment of petitioner was consistent with a psychological evaluation performed on him in one of his prior child abuse and neglect cases.

4

Following testimony, the circuit court adjudicated petitioner as an abusing parent. The circuit court found that petitioner had a long history of CPS involvement spanning the course of nearly two decades. The circuit court found that petitioner had received services over the course of the prior proceedings and that he either failed to avail himself of them or did not benefit from them, and "he just does not appear to get it." The circuit court noted that petitioner's parental rights were terminated to four other children and that he has not remedied the conditions of abuse or neglect for which his rights were previously terminated. The circuit court further found that petitioner had previously been found to have sexually abused his step-daughter in a prior abuse and neglect case.

The circuit court further found that the testimony established several troublesome issues, particularly as it related to petitioner's failure to obtain adequate medical care for the child at issue. The circuit court noted that the child had to undergo reconstructive surgery due to having fifteen decayed teeth and was hospitalized due to UTIs and other infections, which indicated "a complete and total lack of care and hygiene." The circuit court further found that the child had sustained a labial adhesion, anal tears, and other matters, and had been referred for a number of interventions that petitioner failed to follow through with. The circuit court found that petitioner "has a complete and total lack of acceptance of any responsibility based upon his testimony and based upon Ms. Nelson's forensic assessment." The circuit court also denied petitioner's motion for a post-adjudicatory improvement period.

In September of 2020, the circuit court held a dispositional hearing. The DHHR presented the testimony of a CPS worker who testified that the DHHR recommended termination of petitioner's parental rights to the child based upon the evidence presented in the proceedings thus far. The CPS worker opined that there were no services that could be offered that would aid petitioner in substantially correcting the conditions of abuse and neglect in the near future, and further opined that termination of his parental rights would create permanency for the child. By order entered on November 12, 2020, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. The circuit court relied upon Ms. Nelson's evaluation, especially her opinion that

> over the course of nearly twenty (20) years, [petitioner has] devastated the lives of six (6) children. Rather than point out [his] numerous failings as a parent, it is easier for this examiner to say that there is absolutely nothing found in this examination that recommends [petitioner] as a parent and much to indicate that children in [his] care are in danger.

The circuit court further found that petitioner was provided months, if not years, of services throughout prior proceedings but that he had not followed through with rehabilitative services designed to prevent or reduce the abuse and neglect of the child. The circuit court also incorporated

5

its findings from the adjudicatory hearing. Petitioner appeals the November 12, 2020, dispositional order terminating his parental rights to the child.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises several assignments of error in which he alleges that the circuit court erred in adjudicating him as an abusing parent. Petitioner contends that the evidence raised against him regarded circumstances that were not existing at the time of the petition's filing. Petitioner avers that the circuit court relied primarily upon his prior abuse and neglect cases, the most recent of which occurred in 2006. Petitioner states that this Court has previously held that the DHHR continues to have the burden of demonstrating abuse and neglect of subsequently born children following the prior termination of parental rights. *See In re George Glen B.*, 207 W. Va. 346, 532 S.E.2d 64 (2000) (holding that the DHHR continues to bear the burden of proving that the subject child is abused or neglected when the petition was filed on the basis of a prior termination of parental rights). Petitioner argues that the evidence demonstrated that he had substantially improved his parenting since 2006. Indeed, the DHHR waited until G.H. was almost six years old to file the petition. Petitioner also avers that the DHHR did not prove that he neglected the child's medical, dental, hygienic, or educational needs given Dr. Divita's testimony to the contrary. Further, petitioner argues he presented "credible evidence" that he has been a good and responsible parent for G.H. through the testimony of the child's preschool teacher and his daughter, S.M. Petitioner also argues that there was no evidence that he abused drugs or alcohol, which was supported by the testimony of B.M. Petitioner claims that the circuit court failed to give proper weight to the testimony of the witnesses he called and that Ms. Nelson's testimony is insufficient to establish that he abused or neglected the child.

We have previously held as follows:

---

[3]The mother's parental rights were terminated below. The permanency plan for the child is adoption by her foster family.

6

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (citation omitted).

We conclude that the circuit court was presented with sufficient evidence to find that petitioner abused or neglected G.H. The crux of petitioner's argument is that the circuit court abused its discretion in weighing the evidence of his prior proceedings and finding Ms. Nelson's testimony as more credible and probative than that of his own witnesses. However, this Court has repeatedly held that credibility determinations are for a circuit court to make and will not be disturbed on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Here, petitioner presented testimony of friends and family to support his contention that he was a good parent, cared for the child, maintained her hygiene, and attended to her medical needs. The circuit court heard this testimony and determined it was so peculiarly similar as to be suspicious to the court. Further, medical records demonstrated that, contrary to petitioner's claims, the child's hygiene and medical needs were significantly neglected. In contrast to the testimony of petitioner's friends and family, Ms. Nelson testified that petitioner was unable or unwilling to make good decisions, that petitioner denied responsibility for his actions, and that petitioner's prognosis for attaining minimally adequate parenting was poor to nonexistent. Ms. Nelson concluded that any children in petitioner's care would be in danger. Importantly, this assessment was consistent with the assessment of petitioner from a psychological evaluation performed in prior child abuse and neglect proceedings. Further, petitioner's own testimony corroborated Ms. Nelson's conclusions.

In further support of his claim that he was improperly adjudicated as an abusing parent, petitioner argues that the circuit court erred in finding that he "was guilty of sexual abuse" in a prior abuse and neglect proceeding because he was not a respondent parent in that case and was prohibited from testifying and defending against those allegations. He also argues that the circuit court placed "far too much weight [on this] questionable finding." Even assuming petitioner's argument holds merit and the circuit court erred in finding that petitioner was "found guilty" of sexual abuse in a prior case, the record reveals that the circuit court put little weight on this finding and there was sufficient evidence to adjudicate him as an abusing parent absent this finding, as set forth above.

7

In sum, the circuit court properly considered petitioner's prior termination of parental rights, considered evidence that indicated he lacked the will or ability to provide adequately for G.H., and assessed the credibility of all witnesses involved. Based on the foregoing, we find no error in petitioner's adjudication as an abusing parent.

Petitioner also argues that the circuit court erred in denying him an improvement period. Petitioner argues that his repeated requests to participate in services and visit the child should have been considered a significant factor in determining his potential to improve his parenting skills. He contends that the circuit court erroneously considered his alleged failure to comply with services in prior proceedings. Petitioner states that he had not been provided services since 2007 and that substantial evidence indicated that he had improved his parenting.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner claims that his repeated requests for services and visitation with the child indicate that he was likely to comply with an improvement period, the evidence demonstrated that petitioner failed to take responsibility for his actions or acknowledge the conditions of abuse and neglect. Petitioner minimized the extent of the child's medical and hygienic conditions during the proceedings below and minimized his responsibility for the same. Also, as noted above, petitioner minimized the circumstances leading to the termination of his parental rights to his older children. Petitioner blamed his ex-wife for his circumstances, testified that an acquaintance reported him to CPS due to a disagreement, and claimed that the situations leading to his children's removal were out of his control rather than a direct result of his abuse and neglect. Ms. Nelson testified that because petitioner took no responsibility for his actions, he had little motivation to change, as evidenced by his involvement in several cases despite having been provided services. Ms. Nelson opined that there were no services that could be provided that would assist petitioner in addressing the conditions of abuse and neglect. This Court has previously held that "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citing *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Accordingly, given petitioner's history of CPS intervention coupled with the fact that he continued to minimize his actions, we find no error in the circuit court's decision to deny him an improvement period.

The evidence set forth above likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's

welfare. Pursuant to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As set forth above, petitioner failed to acknowledge the conditions of abuse and neglect, thereby making them untreatable. Accordingly, we find no error in the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the child's welfare. Based on these findings, termination of petitioner's parental rights, as opposed to a less-restrictive dispositional alternative, was appropriate.

Lastly, petitioner claims that the circuit court erred in failing to enter the dispositional order within ten days of the dispositional hearing, in violation of Rule 36 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. However, aside from quoting this rule, petitioner provides no argument regarding how he was prejudiced by this delay. Moreover, this Court has held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Given petitioner's failure to demonstrate that he was somehow prejudiced by the circuit court's failure to timely enter the dispositional order, we cannot find that the Rules of Procedure for Child Abuse and Neglect Proceedings or the related statutes have been substantially disregarded or frustrated such that vacation is warranted. Therefore, we find no reversible error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 12, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton